UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY ERICKSON | Case Number |
| Plaintiff | |
| | CIVIL COMPLAINT |
| vs. | |
| MIDLAND CREDIT MANAGEMENT, INC. | JURY TRIAL DEMANDED |
| Defendant | |

## COMPLAINT AND JURY DEMAND

**COMES NOW,** Plaintiff, Amy Erickson, by and through her undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire complaining of Defendant and respectfully avers as follows:

### I.   INTRODUCTORY STATEMENT

1. Plaintiff, Amy Erickson (hereinafter "Plaintiff"), is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## II.  JURISDICTION

2. Jurisdiction of this court arises under 15. U.S.C. § 1692k(d) and 28 U.S.C. §1337.

3. Venue in this District is proper in that the Plaintiff resides here and the Defendant transacts business in this District.

## III.  PARTIES

4. Plaintiff, Amy Erickson, is an adult natural person residing at 3717 Hickory Lane, Bensalem, PA 19020.  At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5. Defendant, Midland Credit Management, Inc. at all times relevant hereto, is and was a corporation engaged in the business of collecting debt within the Commonwealth of Pennsylvania and the State of California with a principal place of business located at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail.  Defendant regularly attempts to collect consumer debts alleged to be due to another.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

## IV.  FACTUAL ALLEGATIONS

7. In or around 2009, Plaintiff entered into a payment agreement with Defendant to pay off a bill originally owed to GE Money Bank.

8. Plaintiff began making monthly payments to Defendant in the amount of $50.00 and then decreasing the monthly payments to $25.00 per the agreement.

9. Plaintiff paid Defendant consistently and on time each month.

10. Plaintiff's payments were automatically withdrawn from Plaintiff's bank account each month by Defendant.

11. In or around March 2011, Plaintiff was a victim of fraud and subsequently needed to change her bank account information to prevent future loss.

12. Upon Plaintiff changing her bank account information, Plaintiff attempted to contact Defendant's agent, "Robbie Watson" who had been Plaintiff's account manager for the past two years.

13. Plaintiff was unable to reach Defendant's agent, "Robbie Watson" but left several messages on "Robbie Watson's" answering machine stating that there was a change in Plaintiff's account information and wanted to update Defendant to make the necessary changes before the next payment was due.

14. Plaintiff did not leave the new account number on agent, "Robbie Watson's" answering machine since she did not feel comfortable in leaving such personal information in case the message was not private.

15. Plaintiff was unable to make contact with agent, "Robbie Watson" who failed to return any of Plaintiff's phone calls.

17. On or around April 19, 2011, Plaintiff received a letter from Defendant dated April 16, 2011 stating that Defendant had not received a payment from Plaintiff in

the past 35 days but acknowledged that Plaintiff had been making previous payments in attempt to settle the outstanding balance.  **See Exhibit "A" attached hereto.**

18. In the aforementioned letter, Defendant stated that Plaintiff owes a payment for a minimum amount of $50.00 due on or before May 16, 2011.

19. Upon receiving Defendant's April 16 letter, Plaintiff contacted Defendant using the phone number provided in the letter.

20. Plaintiff immediately asked if she could speak with Defendant's agent, "Robbie Watson" but the agent who answered Plaintiff's phone call told Plaintiff that "Robbie Watson" was no longer handling Plaintiff's account.

21. Plaintiff then explained to Defendant's agent what took place with Plaintiff's bank account and that Plaintiff wanted to rectify the situation but was unable to reach Plaintiff's account manager to do so before the payment was missed.

22. Defendant's agent told Plaintiff that Defendant wanted Plaintiff to pay the remaining balance in full.

23. Plaintiff questioned Defendant's agent on why Defendant would have sent Plaintiff a letter through the mail stating that Plaintiff can pay a minimum amount of $50.00 if Defendant wanted Plaintiff to pay the balance in full.

24. Defendant's agent responded to Plaintiff by telling Plaintiff to disregard the letter, Defendant wants the full amount and that Plaintiff only has three options to go about paying.

25. Defendant's offered options are as follows:  Option one, Single payment of $1,182.81, Option two, three monthly payments of $689.00 or Option three, twelve monthly payments of $246.00.

26. Plaintiff told Defendant that Plaintiff could not afford any of the aforementioned payment options and that the maximum amount Plaintiff could afford would be $100.00.

27. Defendant's agent replied, "$222.00 for twelve months and that's my last offer!"

28. Defendant's agent gave Plaintiff one hour to make a decision on which option Plaintiff would agree to and to contact Defendant with an answer.

29. Plaintiff informed Defendant's agent that Plaintiff would need to speak with Plaintiff's husband before making any decisions and did not know if she would be able to do so within the hour.

30. Plaintiff contacted Defendant's agent approximately 45 minutes after terminating the first phone call to inform Defendant's agent that Plaintiff was unable to contact her husband since Plaintiff's husband was in a meeting at work.

31. Defendant's agent told Plaintiff, "We will give you until 4:30!"

32. Plaintiff again told Defendant's agent that Plaintiff cannot afford to pay what Defendant had proposed but Defendant's agent continued to repeat, "You have three options.  Option one, option two and option 3!"

33. Plaintiff told Defendant's agent that Plaintiff simply could not afford $240.00 and Defendant's agent responded, "That's fine, we will just turn it over then."

34. Plaintiff asked Defendant's agent what he meant by "turning it over" and Defendant's agent told Plaintiff, "Amy, we will give you until 4:30 to make a decision."

35. Defendant's agent told Plaintiff that if Plaintiff would just agree to pay, that it will then reflect positively on Plaintiff's credit reports and make Plaintiff's life much better.

36. Plaintiff informed Defendant's agent that Plaintiff was not refusing to pay but that Plaintiff simply wanted to continue through with the original agreement of $50.00 a month as per the April 16 letter Plaintiff received from Defendant.

37. Defendant's agent told Plaintiff that the original offer was no longer valid and that Plaintiff's account has been in Defendant's office for "way too long" and that it was "time to be done with it."

38. Plaintiff asked Defendant's agent why Defendant's offer was invalid if Plaintiff contacted Defendant immediately upon receiving the letter. Defendant's agent did not have a reasonable response to Plaintiff's question and the call was terminated.

39. The Defendant acted in a false, deceptive, misleading and unfair manner by threatening to take action that it did not intend to take for the purpose of coercing Plaintiff to pay the debt.

40. The Defendant knew or should have known that their actions violated the FDCPA. Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

41. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

42. At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

## COUNT I – FDCPA

43. The above paragraphs are hereby incorporated herein by reference.

44. At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by the Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

45. The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of 15 U.S.C. § 1692:

§ 1692c(a)(1):   At any unusual time, unusual place, or unusual time or place known to be inconvenient to the consumer

§ 1692d:   Any conduct that natural consequence of which is to harass, oppress or abuse any person

§ 1692d(2):   Profane language or other abusive language

§ 1692e:   Any other false, deceptive or misleading representation or means in connection with the debt collection

§ 1692e(2):   Character, amount, or legal status of the alleged debt

  § 1692e(8): Threatens or communicates false credit information

  § 1692e(10): Any false representation or deceptive means to collect a debt or obtain information about a consumer

  § 1692f: Any unfair or unconscionable means to collect or attempt to collect the alleged debt

**WHEREFORE**, Plaintiff respectfully requests that this court enter judgment in her favor and against Midland Credit Management, Inc. for the following:

 a. Actual damages;

 d. Statutory damages pursuant to 15 U.S.C. §1692k;

 c. Reasonable attorney's fees and costs of suit pursuant to 15 U.S.C. §1692k; and

 d. Such addition and further relief as may be appropriate or that the interests of justice require.

<u>COUNT II</u>

**VIOLATIONS OF PENNSYLVANIA FAIR CREDIT EXTENSION UNIFORMITY ACT**
**(FCEUA, 73 Pa. C.S. § 2270.1 <u>et seq.</u>)**

 46. Plaintiff repeat, re-allege and incorporate by reference the foregoing paragraphs.

 47. The collection of a debt in Pennsylvania is proscribed by the Fair Credit Extension Uniformity Act at 73 Pa. C.S. § 2270.1 <u>et seq.</u>, ("FCEUA") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 Pa. C.S 201-1 <u>et seq.</u> ("UTPCPL").  Defendant is a debt collector pursuant to 73 Pa. C.S. § 2270.3.

48. The alleged debt Defendant was attempting to collect is a debt as defined by 73 Pa. C.S. § 2270.3.

49. The FCEUA proscribes, <u>inter alia</u>, engaging in any false, misleading or deceptive representations when attempting to collect a consumer debt.

50. The actions of Defendant, as aforesaid, constitute false, misleading or deceptive representations.

51. Violations of the FDCPA is a <u>per se</u> violation of the FCEUA and the UTPCPL.

52. As a direct and proximate result of the said actions, Plaintiff has suffered financial harm.

53. By virtue of the violations of the law as aforesaid, and pursuant to the FCEUA and UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fee and costs of suit.

**WHEREFORE**, Plaintiff prays this Honorable Court enter judgment in her favor and against Defendant, and Order the following relief:

   a. Actual damages;

   b. Treble damages;

   c. An award of reasonable attorneys fees and expenses and costs of court; and

   d. Such additional relief as is deemed just and proper, or that the interests of justice require.

## COUNT III
## VIOLATIONS OF PENNSYLVANIA CONSUMER PROTECTION LAW ("UTPCPL"), 73 Pa. C.S. § 201-1 et seq.

54. The foregoing paragraphs are incorporated herein by reference.

55. Plaintiff and Defendant are "Persons" to 73 Pa. C.S § 201-2.

56. The UTPCPL proscribes, inter alia, engaging in any "unfair or deceptive acts or practices", either at, and prior to or subsequent to a consumer transaction.

57. The action of Defendant, as aforesaid, constitutes unfair acts or practices under the UTPCPL, by way of the following, inter alia:

   a. Defendant misrepresented to Plaintiff the character, extent or amount of the debt or its status in a legal proceeding, 73 Pa. C.S. § 201-3.1;

   b. Defendant engaged in deceptive or fraudulent conduct which created a likelihood of confusion or of misunderstanding, 73 Pa. C.S. § 201-2(xxi);

   c. Defendant failed to comply with the FDCPA and FCEUA which are per se violations of the UTPCPL.

58. As a direct and proximate result of the said actions, Plaintiff has suffered financial damages and other harm.

59. By virtue of the violations of law aforesaid and pursuant to the UTPCPL, Plaintiff is entitled to an award of actual damages, treble damages, attorney's fees and costs of suit.

**WHEREFORE** Plaintiff prays this Honorable Court enter judgment in her favor and against Defendant, and Order the following relief:

a. An Order declaring that Defendant violated the UTPCPL;

b. Actual damages;

c. Treble damages;

d. An award of reasonable attorney's fees and expenses and cost of suit; and

e. Such additional relief as is deemed just and proper, or that the interest of justice may require.

## V.   JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

Date: May 16, 2011        BY: */s/ Bruce K. Warren BKW4066*
                          Bruce K. Warren, Esquire

                          BY: */s/ Brent F. Vullings BFV8435*
                          Brent F. Vullings, Esquire

                          Warren & Vullings, LLP
                          93 Old York Road
                          Suite 333
                          Jenkintown, PA  19046
                          215-745-9800   Fax 215-745-7880
                          Attorneys for Plaintiff